**Timothy Kent ANTHONY, Jr. and Richard A. Lybarger, As Guardian Ad Litem, Appellants,**

v.

**Jeanie L. MAYS and Scott Adair Mays, Appellees.**

No. 04–88–00542–CV.

Court of Appeals of Texas, San Antonio.

Sept. 27, 1989.

Stephen Miller, San Antonio, for appellant.

Richard A. Lybarger, guardian ad litem, San Antonio.

I. Blair McLeod, Jr., San Antonio, for appellees.

Before BUTTS, CARR and STEPHENS, JJ.

## OPINION

BILL J. STEPHENS, Assigned Justice [1].

This appeal is prosecuted by the duly appointed guardian ad litem of Daniel Ray Anthony, the minor child of Timothy K. Anthony, Jr., from the grant of judgment non obstante veredicto, terminating the parent-child relationship of Daniel with his natural father, after a jury's verdict that termination was not in the best interest of the child.

In one point of error, the guardian ad litem contends that the trial court erred in entering judgment non obstante veredicto, because the evidence at trial was sufficient to support the jury finding that termination of the father's parental rights was not in the best interest of the child. We agree

with the guardian ad litem, and accordingly we reverse the judgment of the trial court, and order the trial court to enter its judgment in accordance with the jury's verdict.

Jeanie L. Mays, the child's natural mother, and Scott Adair Mays, his stepfather, brought suit to terminate the parental rights of Timothy K. Anthony, Jr., the child's natural father, with his son, Daniel Ray Anthony, and to allow adoption of Daniel by his stepfather. Richard A. Lybarger, a licensed attorney, was appointed guardian ad litem of the child.

Appellees and the natural father of the child stipulated that the father had failed to support the child in accordance with his ability during a period of one (1) year ending within six (6) months of the date of filing of the petition.

The case proceeded to trial, and during closing arguments the trial judge asked for the guardian ad litem's recommendation as to termination. A single question was submitted to the jury, inquiring whether from clear and convincing evidence termination of the parent-child relationship was in the best interest of the child. The jury answered that termination of the father's parental rights was not in the best interest of the child.

Appellees filed their motion for judgment non obstante veredicto, and the guardian ad litem filed a brief in opposition. On July 7, 1988, when the father failed to appear at the hearing, the trial judge signed the judgment non obstante veredicto, terminating the parent-child relationship between Timothy Kent Anthony, Jr. and Daniel Ray Anthony. Thereafter, the father filed a motion for new trial and sought to perfect an appeal by filing a request for statement of facts, a request for transcript, and an affidavit of inability to pay cost bond, which was contested by appellees. On hearing of the affidavit of inability to pay costs, the trial judge ordered the father to post a cost bond or pay cash deposit in lieu of bond in the amount of Five Hun-

---

1. The Honorable Bill J. Stephens, Justice, retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

dred Fifty Dollars ($550.00) in order to perfect his appeal. The guardian ad litem perfected this appeal independently of the father.

## INVOLUNTARY TERMINATION OF PARENTAL RIGHTS

For involuntary termination of parental rights, the Texas Family Code requires a two-fold determination. First, it must be found that the parent has done or has failed to do one of the acts set forth in Section 15.02(1) of the Code. In addition to this finding, it must be found under Section 15.02(2), that termination of the parental rights is in the best interest of the child. TEX.FAM.CODE ANN. § 15.02 (Vernon 1986); *Richardson v. Green,* 677 S.W.2d 497, 499 (Tex.1984); *In the Interest of S.H.A.,* 728 S.W.2d 73, 82 (Tex.App.—Dallas 1987, no writ). In the instant case, it was stipulated by the parties that the father, Timothy Anthony, Jr. failed to support the child in accordance with his ability during a period of one (1) year ending within six (6) months of the date of filing the petition. This stipulation, of course, conclusively established one of the conditions of section 15.02(1); however, the second condition, the finding that termination was in the best interest of the child, was the sole question submitted to the jury, which found that termination was not in the best interest of the child. Thus, for our court to uphold the trial court's entry of judgment non obstante veredicto, we must review the evidence, and determine that there was no evidence on which the jury could have based their answer that termination was not in the best interest of the child.

In *Holley v. Adams,* 544 S.W.2d 367 (Tex.1976), the Texas Supreme Court listed some nine factors to be considered in determining the best interest of a child. Although the court held that the list was by no means exhaustive, the nine factors listed were (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) parental abilities of the persons seeking custody; (5) programs avail-

able to assist these individuals to promote the best interest of the child; (6) plans for the child by these individuals; (7) stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.

In the present case the jury was instructed in the charge, as to five of these factors:

1. The emotional and physical needs of the child now and in the future;
2. Any emotional and physical danger to the child now and in the future;
3. The stability of the home;
4. The acts or omissions of the Respondent which may indicate that the existing parent-child relationship is not a proper one; and
5. Any legal excuse of Respondent for his acts or omissions.

■ The question submitted to the jury, was correct by inquiring whether from *clear and convincing evidence* termination of the parent-child relationship was in the best interest of the child. Clear and convincing evidence is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re G.M.,* 596 S.W.2d 846, 847 (Tex.1980); *State v. Addington,* 588 S.W.2d 569 (Tex. 1979). This burden is heavy, and the jury found that the burden was not met.

As was held by the United States Supreme Court in *Stanley v. llinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972):

The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,' ... 'basic civil rights of man,' ... and '[r]ights far more precious ... than property rights.' ... 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' ... The integrity of the family unit has found protection in the Due Pro-

cess Clause of the Fourteenth Amendment, ... the Equal Protection Clause of the Fourteenth Amendment, ... and the Ninth Amendment.

*Id.* at 651, 92 S.Ct. at 1212. The natural right existing between parents and their children is of constitutional dimensions. Furthermore, a termination decree is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985).

### EVIDENCE

■ In reviewing the evidence on which the jury made its determination, the record reveals that a special bond existed between father and son. The paternal grandmother testified that when the child would see his father, his face would light up, and he would be ecstatic. It was shown that when visitation with the father would end, the child would return home reluctantly. The mother testified that the father appeared glad to see his son when exercising visitation rights. It was shown that the father was present at the child's birth and participated in childbirth classes. From the evidence it appears that the father and son went to movies together, ate together, played together, and at times slept together.

The father of the natural mother testified as to a close relationship between father and son, that in his opinion, the parental bonds between father and son should not be severed. The father's present girlfriend, who had observed the father and child together, testified that she had no knowledge of any matter that would justify the termination of the parental rights of the father with his son.

At trial it was shown that both the mother and the father, in the past, had used marihuana, but that this practice was no longer exercised by either of them.

As to the disciplining of the child it was shown that on occasions the stepfather would discipline the child by using a paddle to the extent of leaving bruises. No such evidence of bruising was shown by the father's use of discipline. In fact the testimony was that the father was usually able to discipline the child by counseling him. On one occasion the child was taken to the hospital by his mother where surgery was performed, and the father was not notified.

Additionally, it was shown that efforts had been made to block the visitation of the child by his father. The mother testified that at one time, she and her present husband had told the father they did not want his child support payments; later she told him that they needed the payments. During this time the mother admitted that she intended to block visitation between the father and child.

Although this discussion of the evidence is not exhaustive, it shows that there was more than a scintilla of evidence on which the jury could have based its opinion that it was not in the best interest of the child to have the father's parental rights terminated.

TEX.R.CIV.P. 301 requires that the judgment conform to the verdict, and although upon motion and reasonable notice the court may render judgment non obstante veredicto, it may only do so if a directed verdict would have been proper. The court is not empowered to disregard jury findings unless the finding has no support in the evidence. *Ballard v. Hillcrest State Bank of University Park*, 592 S.W.2d 373 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.). Furthermore, it is basic to our system of jurisprudence that no court is free to substitute its judgment for that of the jury. As set forth in 4 R. McDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 17.28 (rev. 1984):

> The judge may not disregard answers to material issues, set aside findings and make contrary ones, hear additional evidence and make supplementary findings on material issues, or select from conflicting findings those which he approves. He may not supply answers to material issues which the jury has left unanswered.

The Supreme Court of Texas, over ninety years ago, stated it this way:

There can be no clearer principle than that, where a jury has intervened, and all the issues have been submitted to their decision, their verdict must constitute the basis of the judgment. The court cannot look to the evidence on which the verdict was found in order to determine what judgment to render, but must look alone to the verdict; for it is upon that which the jury have found, not what they might or ought to have found, that the court proceeds to render judgment. The judgment is the conclusion of law upon the facts of the case, as found by the verdict of the jury.

*Hume v. Schintz*, 36 S.W. 429, 430 (Tex. 1896).

We conclude that the jury's verdict that termination of the parent-child relationship is not in the best interest of the child, was supported by more than a scintilla of evidence, that appellees failed to prove by clear and convincing evidence that termination was in the best interest of the child, and thus, it was error for the court to render judgment non obstante veredicto. The judgment of the trial court is reversed and this cause is remanded to the trial court with instructions to enter judgment in accordance with the jury's verdict, that termination of the parental rights between Timothy Kent Anthony, Jr., and the child, Daniel Ray Anthony, is not in the best interest of the child.