In re ESTATE OF Mary Ann BEAN, Deceased.

No. 06–05–00102–CV.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 4, 2006.

Decided Oct. 31, 2006.

---

**750**

Randal J. Bays, Kristin Bays, Bays & Bays, Conroe, for appellant.

Emma–Louise J. Edwards, Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

This is an appeal from a judgment on a jury verdict construing Mary Ann Bean's will. Paragraph 6(3) of Bean's will devises "the eighty (80) acres I own in the J. Bennett Survey." The current dispute arose because Bean did not expressly own "80 acres in the J. Bennett Survey." William Shore is both the independent executor and a devisee of his great-aunt Bean's estate. Shore's cousins are Tom G. DeWitt, III, James J. DeWitt, and Marlo DeWitt Senick (the DeWitts). The DeWitts asked the court to declare which interest(s) passed under paragraph 6(3) and which under the residuary clause (devising everything remaining to the DeWitts).[1] After a jury trial, the judge declared the DeWitts to have prevailed, detailed the contours of the paragraph 6(3) conveyance, and assessed attorney's fees against Shore, individually. Shore and his son, Brenham[2] (collectively, the Shores) appeal.

---

1. Only Tom and James. Marlo's interest is adverse to her brothers', though she aligns herself with them.

2. The son's name in the proceedings below and in Bean's will is "Brenham," but he filed as "Brennan" on appeal. For consistency, we will use the name "Brenham" in this opinion.

The Shores, jointly, raise one issue: lack of jurisdiction. Shore, individually, raises three additional issues: (1) violation of Rule 301—judgment inconsistent with the pleadings, evidence, and verdict; (2) improper withdrawal of the surface estate from the jury; and (3) improper attorney's fees. We conclude the trial court properly exercised jurisdiction over this probate matter and essentially entered a proper declaratory judgment, which requires only slight modification. The trial court erred in assessing fees, and remand on this issue is required.

## I. FACTUAL AND PROCEDURAL BACKGROUND

These parties are before this Court for the third time.[3] The DeWitts' current petition sought partition, accounting, and distribution of the estate; a declaratory judgment to construe the will; and removal of Shore as the independent executor. The DeWitts sought a declaration (1) that nothing passed under paragraph 6(3); or, alternatively, (2) "describing the interest which passes pursuant to paragraphs [sic] 6(3)" and which interest(s) through the residuary. More than a year after the DeWitts' application, Shore executed and filed an executor's deed consistent with his construction of paragraph 6(3). The same day, Shore filed an application for discharge and "Verified Final Accounting," claiming full administration of the estate. The trial court then ordered, in an agreed temporary injunction, that Shore and the DeWitts refrain from taking further action on the estate without court action. The DeWitts supplemented their petition to include voiding Shore's executor's deed purporting to convey property pursuant to paragraph 6(3). The case then went to jury trial to determine Bean's intent in paragraph 6(3).

### A. The Will Language

The relevant portions of paragraph 6(3), as amended by two codicils, read:

Regarding the eighty (80) acres I own in the J. Bennett Survey, I give a life estate to my great-nephews, TOM G. DeWITT, III, JAMES J. DeWITT and WILLIAM R. SHORE, JR., . . . as life tenants the right to collect, receive, receipt for, use, enjoy, possess and consume the income from the gas well on the property. . . .

At the death of WILLIAM R. SHORE, JR., I bequeath his one-third share to BRENHAM SHORE, in fee simple.

Upon the death of either TOM G. DeWITT III or JAMES J. DeWITT, I bequeath his one-third share of the life estate to MARLO ANN DeWITT and WILLIAM R. SHORE, JR., equally, as a life estate. Upon the death of the survivor, then I bequeath the entire life estate to BRENHAM SHORE, in fee simple.

### B. The Ambiguity

At trial, the uncontroverted evidence indicated the extent of the estates that Bean owned and might have contemplated devising under paragraph 6(3). Back in the

---

3. *See In re Estate of Bean,* 120 S.W.3d 914 (Tex.App.-Texarkana 2003, pet. denied) (*Bean I* ) (finding no jurisdiction to construe will or order partition and distribution of estate); *In re Shore,* 106 S.W.3d 817 (Tex.App.-Texarkana 2003, orig. proceeding [leave denied] ).

In *Bean I,* this Court found two jurisdictional defects: (1) failure to join Brenham as a necessary party; and (2) failure to wait twen-ty-four months from the appointment of the independent executor before petition. *See Bean I,* 120 S.W.3d at 921–22. This Court also rejected Shore's contention that the court lacks jurisdiction to construe a will under independent administration, an issue Shore raises again in this appeal (see discussion below).

1930s, Bean's parents acquired several properties, totaling 425.59 acres. In 1972, Bean and her siblings partitioned the surface, creating Bean's 77.83–acre surface estate. The siblings expressly excepted the mineral estate from the partition; each sibling still owned a 1/5 undivided interest in the 425.59–acre mineral estate. At the time she drafted her will in 1995 and at her death in 2000, Bean owned the 77.83–acre surface estate in the Bennett and Chaddick surveys and the 1/5 undivided interest in the 425.59–acre mineral estate in the Bennett, Chaddick, McAnulty, and Ravey surveys. On questioning by the Shores at trial, James DeWitt agreed that the 1/5 interest in the 425.59–acre mineral estate constituted a "mineral estate of 85.1 acres."

The Shores took the position that Bean intended to convey both the surface estate and the entire mineral estate. In support, the Shores introduced evidence of other devises in Bean's will that approximated the acreage of the estates and surveys involved. The DeWitts, in support of their position that paragraph 6(3) conveyed only one gas well, submitted evidence of sixteen wells, including one on Bean's 77.83 surface acreage, from which Bean drew income. The Shores presented evidence that only three of these sixteen wells were on the 425.59–acre tract, since Bean's interest was pooled. They also, to refute the "one well" theory, presented evidence that the well on the 77.83 surface acres was not drilled until after both the will and the first codicil (but before the second codicil) were signed.

## C. The Jury Charge

The Shores submitted a proposed jury question, denied by the court, that asked whether paragraph 6(3) conveyed the min-

eral interest in the 425.59–acre tract. Question 2, as initially presented by the court at the charge conference, asked whether Bean conveyed "one particular gas well or . . . her undivided mineral interest *in the real property.*" (Emphasis added.) The Shores did not object to this question. The DeWitts did object and asked the court to change "in the real property" to "in the 77.83 acre tract." The change essentially removed the Shores' position from the jury's consideration. The court, on the record, overruled the DeWitts' objection. The court also ruled that the surface estate was unambiguously not included in paragraph 6(3).

When the court charged the jury, however, it asked about the surface estate and incorporated the overruled DeWitts' change to Question 2. The jury was charged and answered as follows:

**QUESTION 1.**

Do you find that the "eighty (80) acres I own in the J. Bennett Survey" in paragraph 6(3) of the Last Will and Testament of Mary Ann Bean is the 77.83 acre tract owned by Mary Ann Bean at the time of her death?

Answer "Yes" or "No."

Answer: Yes

If you have answered "Yes" to Question 1, then answer the following question. . . . .

**QUESTION 2.**

Do you find that Mary Ann Bean intended to convey her interest in one particular gas well or her undivided interest in the 77.83 acre tract?

Answer "one particular gas well" or "her undivided mineral interest."

Answer: "her undivided mineral interest." [4]

---

4. The jury did not answer Question 3, naming a particular "well on the property," since it

had answered Question 2 as an "undivided

The judgment declared that paragraph 6(3) conveyed the minerals situated "in and under and that may be produced and saved from" the boundaries of the 77.83–acre surface tract, with the remainder of Bean's real property (save that described in two other will paragraphs not at issue), including the 77.83–acre surface estate and the remaining 347.76–acre mineral estate passing to the DeWitts through the residuary.

Though the Shores appear to have properly objected to and preserved error on the jury questions below, they do not raise this error on appeal.[5] Instead, the Shores' appeal progresses on the presumption that the jury *was* asked about Bean's entire undivided mineral interest (i.e., 77.83 means 1/5 of 425.59).

## II. JURISDICTION

### A. Standard of Review

■ A trial court's subject-matter jurisdiction is a question of law an appellate court reviews de novo by examining the pleadings and any other evidence relevant to the determination. *Tex. Natural Res.*

*Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002).

The Shores make two jurisdictional challenges. First, that the court has no jurisdiction to construe a will or order partition and distribution under independent administration. Second, that this particular independent administration was closed at the time of the trial, thereby divesting the court of jurisdiction.

### B. Jurisdiction to Construe a Will Under Independent Administration

We have already ruled on the first jurisdictional challenge in this case. *See Bean I*, 120 S.W.3d at 919 ("pursuant to the UDJA [Uniform Declaratory Judgments Act], the trial court was not deprived of jurisdiction to construe Bean's will merely because it had appointed an independent executor"). The Shores ask us to reconsider that decision.

■ As before, the Shores rely on Section 145(h) of the Texas Probate Code, which prohibits "further action of any nature" in the county court "except where the Code specifically and explicitly provides for some action in the county court."[6] TEX. PROB.CODE ANN. § 145(h)

interest." Question 4 determined the amount of attorney's fees (see discussion below).

5. The Shores would seem to present the issue for review as "Issues Presented," issue 3: "[m]ay a trial court refuse to charge a jury with issues raised by the pleadings and presented to the jury in the evidence ... ?" However, in the body of the brief, it is obvious that this issue only covers the surface estate. For an issue to be properly before this Court, the issue must be supported by argument and authorities and must contain appropriate citations to the record. *See* TEX.R.APP. P. 38.1(h); *Knoll v. Neblett*, 966 S.W.2d 622, 639 (Tex. App.-Houston [14th Dist.] 1998, pet. denied). When the appellant does not provide us with argument that is sufficient to make an appellate complaint viable, we will not perform an independent review of the record and applicable law in order to determine whether the

error complained of occurred. *Ferguson v. DRG/Colony N., Ltd.*, 764 S.W.2d 874, 887 (Tex.App.-Austin 1989, writ denied); *Most Worshipful Prince Hall Grand Lodge v. Jackson*, 732 S.W.2d 407, 412 (Tex.App.-Dallas 1987, writ ref'd n.r.e.). Accordingly, we will not consider the propriety of the jury questions asked. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994); *TXO Prod. Co. v. M.D. Mark, Inc.*, 999 S.W.2d 137, 143 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

6. The Shores contend that this Court "added a phrase" into Section 145(h) in *Bean I* by allowing reference to other codes. While this Court did find that the UDJA conferred jurisdiction, the decision did not misstate the statute. The court has jurisdiction to construe wills under Sections 5 and 5A of the Texas Probate Code. That will construction is ac-

(Vernon 2003). The Shores contend that Section 145(h) requires specific and explicit reference to only those sections of the Texas Probate Code detailing independent administration, yet they provide no authority to support the contention that Section 145(h)'s reference to "the code" actually means *this chapter of* the code." As the Shores' interpretation is unsupported, and is in direct conflict with the actual statutory language, we are unpersuaded.

Section 5(f) of the Probate Code both specifically and explicitly states: "All courts exercising original probate jurisdiction shall have the power to hear all matters incident to an estate." TEX. PROB. CODE ANN. § 5 (Vernon Supp.2006).[7] Section 5A(a) further clarifies matters by defining "incident to an estate" as including, but not limited to: "all actions for trial of title to land incident to an estate ... all actions for trial of the right of property incident to an estate, and actions to construe wills, and generally all matters relating to the settlement, partition, and distribution of estates of deceased persons." TEX. PROB.CODE ANN. § 5A(a) (Vernon Supp.2006); *see also Wallace v. Collins,* 988 S.W.2d 258, 260 (Tex.App.-Texarkana 1998, pet. denied) ("The trial court has the power to hear all matters incident to an estate. . . .").

The Shores' cases in support of their argument are inapposite. This is not a dispute between devisees or legatees and the executor regarding distribution consistent with the terms of a will. Instead, this is an action to construe the will itself, as a necessary prerequisite to distribution. Neither is this a case in which one court does not have jurisdiction because *another* court does.

The Shores present no authority, and we are aware of none, indicating an independent executor's unilateral authority to construe a will. Neither do the Shores present any authority, and we are not aware of any, holding that *all* courts are divested of the power to construe wills under independent administration, as the Shores would have this Court hold. In fact, the Shores' leading case presumes *some* court's ability to construe a will in an independently administered estate. *See Burke v. Satterfield,* 525 S.W.2d 950 (Tex.1975) (holding probate court lacked jurisdiction to enforce a will as it was construed by a district court).

■ While court jurisdiction over independently administered estates is limited, it is not eliminated. *See McCaffity v. Ramsey,* 274 S.W.2d 194, 196 (Tex.Civ. App.-Dallas 1954, writ ref'd n.r.e.). It is long established that courts must ensure that an independent executor "is faithfully carrying out the provisions of the will." *Cocke v. Smith,* 142 Tex. 396, 179 S.W.2d 954, 957 (1944); *see also John Hancock Mut. Life Ins. Co. v. Duval,* 96 S.W.2d 740, 742 (Tex.Civ.App.-Eastland 1936, writ ref'd) (court authorized to "require the executor, independent or otherwise, to comply with the express directions contained in the will"). Where, as here, the meaning of the will itself is unclear, a court must invoke its jurisdiction under Sections 5 and 5A of the Texas Probate Code to determine the proper construction of the will. *Accord Estate of Hanau v. Hanau,* 730 S.W.2d 663 (Tex.1987) (court engages in

---

complished via an action under the UDJA is irrelevant, since such an action is made pursuant to the authority under Section 5A of the Texas Probate Code.

7. We are aware that Sections 5 and 5A of the Texas Probate Code were amended in 2003. The particular language we address was not changed. Since our analysis is not affected, we cite the current version for your convenience.

"characterizing" property for proper distribution in independently administered estate). Once the court construes the will, the independent administrator may then faithfully execute the will, free of judicial supervision, to effect distribution of the estate.

Because the issue was already decided in *Bean I,* because the Shores present no authority in support of the contention that *no* court has the authority to construe a will, and because the Shores do not contend the trial court was the incorrect court under Sections 5 or 5A, the point of error is accordingly overruled.

## C. Jurisdiction Over a "Closed" Estate

■ In the Shores' second jurisdictional challenge, which they characterize as a question of mootness, they contend the court had no jurisdiction since the estate was fully administered prior to trial. The Shores claim that the filing, a year into this litigation but before trial, of the executor's deed over the property at issue constituted the final distribution of the estate assets (save for allowable reserves and third party royalty checks). They contend that, with all debts paid and assets distributed pursuant to Section 149D of the Texas Probate Code, Shore, through his application for discharge under Section 149E, formally announced that the estate was closed.

In support of their position, the Shores cite *Wallace v. Collins,* 988 S.W.2d 258 (Tex.App.-Texarkana 1998, pet. denied), for the proposition that an independent executor's distribution of assets immediately and automatically closes an estate, rendering moot all matters of administration, including accounting, distribution, and will construction. The Shores misstate two points of the law in coming to their conclusion. First, *Wallace* never removed the statutory requirement of a court's acceptance of the independent executor's application. *See* TEX. PROB.CODE ANN. § 149E(c) (Vernon 2003) (requiring court adjudication of independent executor's application). Second, *Wallace* never goes so far as to include will construction among those areas of "administration" under an independent executor's powers. Will construction is for the court, not the independent executor (see discussion above). Since the construction of paragraph 6(3) was a live controversy at the time of Shore's executor's deed conveying property under that paragraph, that property was never rightfully included among "property of the estate that remains in the hands of the independent executor." *See* TEX. PROB.CODE ANN. § 149D(a) (Vernon 2003). Indeed, the property that Shore purported to convey had been removed from his hands by virtue of the pending litigation.

Additionally, while this litigation was pending, and after Shore filed his application, the parties entered into the agreed injunction, essentially deferring to the court on estate matters. The Shores' agreement to this undermines their contention that Shore had unilaterally removed the estate from the court's jurisdiction. Considering that the court had accepted jurisdiction over the construction of the will, signed the agreed temporary injunction, and set the will construction matter for trial, the court was within its authority to not accept Shore's distribution as appropriate under Section 149D, or his Section 149E application as timely.

The Shores cite *In re Estate of Hanau,* 806 S.W.2d 900 (Tex.App.-Corpus Christi 1991, writ denied), for the proposition that an estate is closed on asset distribution and the independent executor's filing of a final account, whether or not litigation is pending. *Hanau* allowed closing an estate

by the independent executor's affidavit under Section 151 of the Texas Probate Code despite pending litigation. However, the Legislature amended Section 151 in 1995, four years after *Hanau* was decided, to prohibit exactly the situation encountered in the present matter and approved in *Hanau*—closing an estate under Section 151 during pending litigation. *See* Act of May 24, 1995, 74th Leg., R.S., ch. 642, § 5, 1995 Tex. Gen. Laws 3516, 3518. Section 151 now reads that an independent administrator may close an estate by affidavit only "when there is no pending litigation." TEX. PROB.CODE ANN. § 151(a) (Vernon 2003). The evidence is undisputed that Shore filed his affidavit to close the estate over a year after this litigation was begun. His application and affidavit may not thus unilaterally defeat the DeWitts' pending applications under Section 151.

Because litigation was pending, the estate was neither fully administered nor discharged, and the estate was not closed under either Section 151 or Section 149E, the Shores' claimed jurisdictional error is overruled.

## III. TEXAS RULE OF CIVIL PROCEDURE 301

### A. The Pleadings

■ A judgment cannot stand unless it is supported by pleadings and evidence. TEX.R. CIV. P. 301. The pleadings invoke the trial court's jurisdiction to render a judgment, and a judgment which the pleadings do not support is considered void. *Hubbard v. Lagow,* 576 S.W.2d 163, 166 (Tex.Civ.App.-Austin 1979, writ ref'd n.r.e.). All pleadings shall be construed so as to do substantial justice. TEX.R. CIV. P. 45. The purpose of pleading is to give the adversary parties notice of each party's claims and defenses, as well as notice of the relief sought. *Perez v. Briercroft Serv. Corp.,* 809 S.W.2d 216, 218 (Tex.1991). In

determining whether a cause of action was pleaded, the court must find the plaintiff's pleadings adequate to state, with reasonable certainty and without reference to information from another source, the elements of the cause of action and the relief sought with sufficient particularity to allow the court to base a judgment. *Stoner v. Thompson,* 578 S.W.2d 679, 683 (Tex.1979). Pleadings will generally be construed as favorably as possible to the pleader. *Gulf, Colo. & Santa Fe Ry. v. Bliss,* 368 S.W.2d 594, 599 (Tex.1963).

■ Shore contends the judgment resulted in a partition of Bean's mineral estate where no partition had been sought in the pleadings. The judgment does not, however, order partition. While partition will now be necessary, the judgment merely construes the will provision, as requested in the pleadings. Partition appears to be left to be accomplished through later distribution of the estate. As such, the question really is: Could the pleadings be construed to request that only part of the mineral estate pass through paragraph 6(3)? The answer is: Of course. The DeWitts' application sought a declaration "describing the interest which passes pursuant to paragraphs [sic] 6(3)" and which interest(s) through the residuary. This put the Shores on notice that the DeWitts sought some or all of the disputed property to pass through the residuary. The very fact of the petition served as notice that the DeWitts wanted less than Bean's full ownership to pass via paragraph 6(3).

### B. The "Case Proved"

■ Shore contends no evidence was submitted on a devise of less than Bean's full ownership interest other than the evidence in support of the one-well theory, which the jury expressly rejected. A jury finding is not based on legally sufficient evidence if: (a) there is a com-

plete absence of evidence to support the finding, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove the matter found, (c) the evidence offered to prove the matter found is no more than a mere scintilla, or (d) the evidence conclusively establishes a different finding. *See Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). Shore's legal sufficiency point requires this Court to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996).

▮ Though Shore's point of error presumes that the weight of the evidence supports a finding that Bean conveyed her full mineral estate, when no objection is made to a jury instruction, we review the sufficiency of the evidence in light of the charge submitted. *See City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex.2000); *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 n. 4 (Tex.2001). It is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge. *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex.2000).

▮ The charge asked the jury if Bean conveyed an interest in one part of her mineral estate or another part of her mineral estate. A mineral estate must be defined by boundaries so that it may be located. *See, e.g., Sharp v. Fowler*, 151 Tex. 490, 252 S.W.2d 153, 154 (Tex.1952). Although Question 2 references "the 77.83

acre tract" without reference to metes and bounds or a more particular description, it does use the definitive article "the" and the jury heard evidence referencing one 77.83–acre tract that supports its finding. Moreover, the evidence supports that the 77.83 acres was within the boundaries of the 425.59 acres. None of this evidence has been challenged as inadmissible or unreliable. As such, more than a scintilla of evidence supports the finding.

## C. The Verdict

▮ It is fundamental to our system of jurisprudence that the trial court may not substitute its judgment for that of a jury. *Anthony v. Mays*, 777 S.W.2d 200, 203 (Tex.App.-San Antonio 1989, no writ). The trial court's duty, and ours, is to ascertain the intention of the jury's answers and render a judgment in conformity with them. *See* Tex.R. Civ. P. 301; *State v. Hale*, 136 Tex. 29, 146 S.W.2d 731, 739 (1941). Appellate courts are further mandated to try to interpret jury findings so as to uphold the trial court's judgment. *See First Fed. Sav. & Loan Ass'n of Dallas v. Sharp*, 359 S.W.2d 902, 903 (Tex. 1962).

Shore does not deny that the judgment language almost exactly tracks the language in Question 2 of the jury's verdict. Nonetheless, Shore contends that the judgment incorrectly interprets the meaning of the language. Shore presents no authority persuading us that "in the" 77.83–acre tract must mean "associated with" or "flowing back to" the 77.83–acre tract, to use Shore's phrases.

Shore also contends "interpreting" Question 2 as contemplating less than Bean's full mineral estate creates an internal inconsistency within Question 2.[8] That

8. This is not an argument that the jury's answers to different questions are irreconcilable. Rather, under the guise of Rule 301, it seems to be a challenge to the court's ability

is, if the jury answered Question 2 "one well," it could have answered Question 3 by naming any one of the sixteen wells from which Bean received income, only three of which were on the 425.59 acres and only one of which was on the 77.83–acre surface estate. Shore contends that, if Question 2's phrase "one well" implicates Bean's full ownership interest, then Question 2's phrase "undivided mineral interest" must as well. The fairness of the phrasing of the question is not an argument properly made under Rule 301. The jury was presented alternate theories of interpretation, one of which asked if Bean intended to convey her mineral interest in 77.83 acres. The jury said she did. The judgment conforms with this answer.

Shore further contends an undivided interest in 77.83 acres is no different than the interest in the one well on the property—a position rejected by the jury. However close these two choices may be, though, they do differ. The judgment does not require, as Shore contends, that only minerals physically touching the 77.83–acre surface estate were conveyed. Rather, the judgment allows for pooling and full ownership of the mineral estate as defined by the boundaries of the 77.83–acre surface estate. The judgment would let the Shores drill 500 wells on those 77.83 acres if they felt so compelled (and were otherwise not prohibited). Meanwhile, Shore presents no authority and points to nothing in the record in support of the contention that one must convey the full extent of what one owns—i.e., that Bean could convey her interest in the 425.59 acres but nothing less—or that the will cannot support a construction which conveys less than Bean's full ownership interest. Because the entry of judgment is consistent with the pleadings and case proved, and conforms with the jury's an-

to enter judgment on a jury question now

swers to the questions asked, these points of error are overruled.

### D. The Devisees

Shore also contends the trial court erred in entering that part of the judgment describing the remainder life estates. Paragraph 6(3), after providing for William, Tom, and James to share a life estate, devises the property as follows:

> At the death of WILLIAM R. SHORE, JR., I bequeath his one-third share to BRENHAM SHORE, in fee simple.

> Upon the death of either TOM G. DeWITT, III or JAMES J. DeWITT I bequeath his one-third share of the life estate to MARLO ANN DeWITT and WILLIAM R. SHORE, JR., equally, as a life estate. Upon the death of the survivor, then I bequeath the entire life estate to BRENHAM SHORE, in fee simple.

The court restated this part of paragraph 6(3) in the judgment as follows:

1. 1/3 ... to Tom G. DeWitt, III, for life with remainder equally to Marlo Ann DeWitt Senick and William R. Shore for life and with remainder to Brenham Shore, in fee simple, upon the death of the survivor;

2. 1/3 ... to James Jay DeWitt for life with remainder equally to Marlo Ann DeWitt Senick and William R. Shore for life and with remainder to Brenham Shore, in fee simple, upon the death of the survivor; and

3. 1/3 ... to William R. Shore for life with remainder to Brenham Shore, in fee simple.

Shore contends the judgment as rendered misstates the remainder life estate in William and Marlo created at the death of James or Tom. He further contends this

seen as "unfair."

part of the judgment serves as a reformation of the devisees not requested in the pleadings. We agree with Shore that the will provides that the remainder life estate in William and Marlo is created at the death of the first of James and Tom and is measured by the survivor of the other of James and Tom. We further agree that the judgment misstates the unambiguous terms of the will by allowing for two remainder life estates and by measuring the remainder life estates by the survivor of Marlo or William.

For these reasons, and because the DeWitts essentially concede that the judgment may require modification on this point, we hereby modify the judgment to provide that: (1) the numbered paragraphs 1–3 on the unnumbered third page of the declaratory judgment (as quoted above) are deleted; and (2) the following paragraphs are substituted:

1. 1/3 each to Tom G. DeWitt, III, James Jay DeWitt, and William R. Shore, Jr., for life.

2. At the death of William R. Shore, Jr., William R. Shore, Jr.'s, 1/3 share to Brenham Shore in fee simple.

3. At the death of the first of Tom G. DeWitt, III and James Jay DeWitt, the deceased's 1/3 share to Marlo Ann DeWitt Senick and William R. Shore, Jr., equally, for the life of the survivor of James Jay DeWitt and Tom G. DeWitt, III. At the death of the second of Tom G. DeWitt, III and James Jay DeWitt, both Tom G. DeWitt, III's and James Jay DeWitt's shares to Brenham Shore, in fee simple.

## IV. REMOVING THE SURFACE ESTATE FROM THE JURY

■■■■ Will construction is only a matter for a jury if the provision at issue is ambiguous as a matter of law. "If the court can give a certain or definite legal meaning or interpretation to the words used, the will is unambiguous, and the court should construe it as a matter of law." *Steger v. Muenster Drilling Co.,* 134 S.W.3d 359, 373 (Tex.App.-Fort Worth 2003, pet. denied). The trial court ruled as a matter of law that the will was unambiguous in contemplating only a mineral estate. Shore contends this was error since (1) evidence submitted supports a different conclusion; and (2) the jury appears, in Question 1, to have agreed that paragraph 6(3) conveyed a surface estate.

■■■■ This extrinsic evidence and alleged verdict are not capable of transforming unambiguous will language into ambiguous language. A testator's intent must be discerned from "the language found within the four corners of the will" through a careful examination of the words used. *San Antonio Area Found. v. Lang,* 35 S.W.3d 636, 639 (Tex.2000). "If the will is unambiguous, a court should not go beyond specific terms in search of the testatrix's intent." *Id.* Therefore, "extrinsic evidence applies only when a term is open to more than one construction." *Id.*

■■■■ The will reads: "[r]egarding the eighty (80) acres ... I give a life estate ... to ... the gas well." The language clearly contemplates a mineral estate, but makes no mention of a surface estate. Moreover, the will specifies various mineral property rights and is silent on any rights attendant to the surface estate. Shore contends the use of the phrase "fee simple" requires (1) a conveyance coextensive with Bean's ownership interests; and (2) a merging of the two estates. We have addressed the former of these contentions above, and add only that the judgment does convey a fee interest in the land described in Question 2. As to the

latter contention, Shore presents no authority for the proposition that the fee conveyance of a severed mineral estate must merge with the fee interest in the severed surface estate. In fact, the merger of a lesser estate into a greater "is disfavored in Texas." *Steger*, 134 S.W.3d at 376. Merger must not occur when it is "contrary to the intention of the owner of the two estates." *Id.* The Bean family expressly severed the surface and mineral estates in 1972. While the severance of the estates indicates an intent against merger, Shore points to no evidence in the record indicating that Bean intended to merge the estates. The point of error is overruled.

## V. ATTORNEY'S FEES AND COSTS OF COURT

The DeWitts presented evidence of an aggregated fee to the jury. The evidence referenced the community fee norm and the attorney's hourly rate, but did not break down the fee to specific tasks or dates. The jury found that the "reasonable fee for necessary service of Plaintiff's attorney in this case" was $28,614.17. The court assessed that fee against Shore, individually. Shore claims several points of error.

### A. Evidentiary Sufficiency

 Review of attorney's fees under the UDJA requires a "multi-faceted review involving both evidentiary and discretionary matters." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998).

[I]n reviewing an attorney fee award under the Act [UDJA], the court of appeals must determine whether the trial court abused its discretion by awarding fees when there was insufficient evidence that the fees were reasonable and necessary, or when the award was inequitable or unjust. Unreasonable fees *cannot* be awarded, even if the court

believed them just, but the court may conclude that it is not equitable or just to award even reasonable and necessary fees.

*Id.* "[T]he Declaratory Judgments Act entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Neeley v. W. Orange–Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 799 (Tex.2005).

 The reasonableness and necessity of attorney's fees "is a question of fact for the jury's determination." *Bocquet*, 972 S.W.2d at 21. Shore does not dispute that the jury found the fees assessed to be reasonable and necessary. Shore instead asserts that fees may only be determined to be reasonable and necessary on a showing and consideration of each of the eight factors listed in the disciplinary rules. *See* TEX.R. DISCIPLINARY P. 1.04, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A–1 (Vernon 2005). The caselaw is clear, however, that this list is a *guide* for the fact-finder. *See, e.g., Bocquet*, 972 S.W.2d at 21. We decline to extend the law to mandate the showing of each of the eight factors as a prerequisite for fee recovery. This point of error is overruled.

### B. Nonprevailing Parties

 Shore next contends that the DeWitts, as nonprevailing parties, are not entitled to fees or costs. However, nonprevailing parties are allowed to recover fees under the UDJA. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997) ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."); *Barshop v. Medina County Underground Water Conservation*

*Dist.*, 925 S.W.2d 618, 637 (Tex.1996) ("attorney's fees in declaratory judgment actions is clearly within the trial court's discretion and is not dependent on a finding that a party 'substantially prevailed' "); *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 77 (Tex.App.-Dallas 2001, pet. denied). Shore admits as much, but contends that, under the equity prong of the fee analysis, the award of fees to a nonprevailing party is neither equitable nor just. Though Shore presents several cases in which fee awards to "the prevailing party" were remanded for reconsideration when the appellate court reversed on the merits, none of these cases requires that a party must prevail as a prerequisite for recovery. *See, e.g., Neeley*, 176 S.W.3d at 799. The argument that the award of fees to a non-prevailing party is de facto unjust is inconsistent with the explicit language in the statute and the caselaw.

■■■■■ Moreover, we do not agree that the DeWitts did not prevail. A prevailing party is "one of the parties to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of its original contention." *City of Amarillo v. Glick*, 991 S.W.2d 14, 17 (Tex. App.-Amarillo 1997, no pet.). While the DeWitts did not succeed in getting both the surface and mineral estates to pass through the residuary clause, they did get the court to declare the surface estate and most of the mineral estate to pass through the residuary clause. Shore contends the jury answered each question (except for the amount of attorney's fees) against the DeWitts in favor of the answer for which the Shores argued, and so the Shores prevailed. But, as Shakespeare wrote, "[T]here's small choice in rotten apples." Shakespeare, *The Taming of the Shrew*, act 1, sc. 1, lines 134–35. While the jury answered as much in the Shores' favor as it could, the jury was never asked to consider the surface estate or the bulk of the mineral estate, which the trial court had already excised in the DeWitts' favor. The Shores did not prevail, and the point of error is overruled.

**C. The Award Against Shore Individually**

■■■■■ Shore seeks reversal of the fees assessed against him individually, rather than in his capacity as executor. Essentially, Shore contends the individual award is inequitable and unjust, noting that the declaration sought to undo certain actions that he had taken as executor and not as an individual. At trial, the DeWitts addressed Shore only in his representative capacity. The DeWitts told the jury that Shore, "acting as executor for Mary Ann Bean, made a deed. And that deed doesn't look like this will" and that "that's why we're here." The DeWitts continued that "we need to hold this executor to the terms of the will under which he is serving." It does seem to be both inequitable and unjust, as those terms are used colloquially, to assess fees against Shore, individually. But the colloquial use of the words is not at issue.

The DeWitts assert that Shore waived this issue on appeal by not objecting to the capacity under which fees were sought at trial. We agree. Failing to obtain a ruling on his individual liability in the trial court, the issue was within the trial court's discretion "to assess attorney's fees against any or all parties." *46933, Inc. v. Z & B Enters., Inc.*, 899 S.W.2d 800, 809 (Tex.App.-Amarillo 1995, writ denied); *see also Ray Malooly Trust v. Juhl*, 186 S.W.3d 568, 571 (Tex.2006).

This Court may only reverse the award on a finding that the trial court abused its discretion by deciding the issue without reference to any guiding rules or principles. *See Downer v. Aquamarine Opera-*

*tors, Inc.,* 701 S.W.2d 238 (Tex.1985); *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991). The fact that Shore did appear both as the executor and as an individual provides support for the award against him individually. Because the trial court acted within its discretion in assessing the fees against Shore as one of the named parties, this point of error is overruled.

### D. Segregation

■ Finally, Shore contends the fee award was in error for failure to segregate the fees between parties and causes. A party seeking to recover attorney's fees must segregate those fees attributable to different parties or causes, except "when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.'" *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 11 (Tex.1991) (quoting *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.,* 739 S.W.2d 622, 624–25 (Tex.App.-Dallas 1987, writ denied)). On a finding that the fees are capable of segregation, this Court must remand the fee issue to the trial court. *Sterling,* 822 S.W.2d at 12.

### 1. Separate Parties

■ Shore contends the DeWitts' failure to segregate fees between defendants constituted reversible error. "[I]n order to show the reasonableness and necessity of attorney's fees, the plaintiff is required to show that the fees were incurred while suing the defendant sought to be charged...." *Sterling,* 822 S.W.2d at

10. *Sterling* does not extend as far as Shore would have it—i.e., that, in all cases with multiple defendants, fees *must* be segregated. *See, e.g., AU Pharm., Inc. v. Boston,* 986 S.W.2d 331, 337 (Tex.App.-Texarkana 1999, no pet.) (action against Ivy and AU on same claim need not be segregated where interests the same). Shore fails to indicate any way in which any defendant's interest diverges from another's so as to render fees against one unattributable against another. The pleadings indicate that Shore answered with the same position both individually and as executor[9] and that Brenham made no answer, though his mother did appear as his guardian at trial.[10] It is not unreasonable or an abuse to not segregate between nondivergent defendants. *See Sterling,* 822 S.W.2d at 11.

### 2. Separate Causes

■ "Attorney's fees incurred in defending a separate lawsuit cannot be recovered under section 37.009 of the Act, notwithstanding that the separate lawsuit concerned the same issues as those in the declaratory judgment suit." *Dalisa, Inc. v. Bradford,* 81 S.W.3d 876, 880 n. 2 (Tex. App.-Austin 2002, no pet.). Shore contends the fees incurred in *Bean I* were improperly not segregated from fees incurred after the filing of the petition in this suit in December 2003. The DeWitts admit that the evidence on fees submitted to the jury went back to work from 2001, during the prior suit and unsuccessful appeal, but contend that the current petition is a mere "amendment" of the prior one. We disagree. Because the 2001 declaratory judgment action was dismissed for lack

---

9. The DeWitts served the original petition on Shore, through his attorney, as independent executor, individually, and guardian of Brenham. Shore's pleadings refer to Shore as "the Independent Executor and one of the defendants."

10. This Court previously recognized that "Brenham Shore's interest under the will is consistent with that of his father, i.e., however goes Shore's interest, so goes that of Brenham Shore." *Bean I,* 120 S.W.3d at 921.

of jurisdiction in the trial court, it may not be "amended." That the cause number is the same in both suits is irrelevant since the cause number under which both actions—that from 2001 and the current one initiated in 2003—were docketed is actually the cause assigned to the probate of Bean's estate, and not exclusive to any particular petition on that estate. To this end, the DeWitts are not, in this declaratory judgment action, entitled to fees from the 2001 lawsuit.

Shore also contends the fees were not segregated between different causes of action filed since 2003. Shore asserts that fees are only available for work done on the declaratory judgment and not the petitions for an accounting and distribution and for the removal of Shore as executor. The DeWitts' attorney, in submitting his evidence of fees at trial, stated that he "went through and omitted from our bill things that I saw that did not relate to the declaratory judgment action." However, in the DeWitts' "Supplemental Petition for Declaratory Judgment," submitted days before trial, the DeWitts sought "all relief requested in other active pleadings which are presently on file" and "such other and further relief to which Plaintiff / Applicants may be justly entitled and for which they will ever pray." This would seem to include, under the banner of "work on the declaratory judgment," work on all pleadings in the case, including the removal of the executor and for an accounting and distribution. The declaratory judgment rendered does not purport, however, to distribute the estate, require a final accounting, or remove the executor.[11] The broad prayer for relief in the DeWitts' supplemental application requires segrega-

tion between the causes of action beyond the trial assertion that things that did not "relate" were segregated. The DeWitts are entitled to, at most, those fees attributable to will construction and quiet title since the December 2003 petition. Accordingly, Shore's contention in this regard is sustained.

## VI. CONCLUSION

That part of the judgment regarding attorney's fees is reversed and remanded for trial consistent with this opinion. The judgment, as modified, is affirmed in all other respects.

---

11. Shore refers to himself in his pleadings to this Court and in his trial court motion for a judgment notwithstanding the verdict as the "former independent executor." Other than his pleadings which so assert, there is no evidence in the record on appeal of his removal or discharge as independent executor.