**Affirmed and Opinion Filed November 21, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00780-CV**

**ROBERT LANSING WAKEFIELD, Appellant**
**V.**
**RUBIO DIGITAL FORENSICS, LLC, Appellee**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-02783-2020**

## MEMORANDUM OPINION

Before Justices Molberg, Carlyle, and Smith
Opinion by Justice Molberg

Appellant Wakefield was a party to a family law dispute and engaged Tadlock

to be his attorney. Tadlock then engaged Appellee Rubio Digital Forensics, LLC

(Rubio), a computer forensics expert, via a written contract to provide expert

services to benefit Wakefield. After a bench trial between Rubio and Wakefield

concerning an unpaid balance under the contract, the trial court entered judgment in

Rubio's favor.

In four issues, Wakefield challenges the trial court's judgment based on: (1)

the sufficiency of the evidence to prove there was a contract between Wakefield and

Rubio; (2) the sufficiency of the evidence to prove Tadlock acted as an agent for

Wakefield; (3) the availability of relief under quantum meruit where there was an express contract; and (4) the non-segregation of Rubio's attorney's fees.  We affirm.

## I. RELEVANT BACKGROUND

Tadlock believed Wakefield needed an expert to strengthen his family law case, had previously retained Rubio on another case, and engaged Rubio on Wakefield's behalf.  The contract stated it was between Rubio and "Law Office of Gerald Tadlock, a(n) attorney for R.L. Wakefield ('Client')."  The contract was executed by Tadlock and Graciela Rubio, the owner of Rubio.

Wakefield then delivered an Apple watch, previously belonging to his ex-wife, to Rubio for the purpose of extracting from it certain information and data relevant to issues in Wakefield's family law case.  Graciela Rubio testified that during this meeting, Wakefield instructed her "just to do whatever his attorney said" and she performed the work requested.  No estimate for this work was ever requested or provided, but the contract did state Rubio's hourly rate.

Wakefield testified that Tadlock told him the watch was important to his case, that if he gave the watch to Rubio the court would admit it, "that it was a lot of money but it will get in," and that Wakefield agreed with Tadlock's counsel. Wakefield also testified that he learned Rubio's bill was approaching $10,000 as he was arriving to court for his hearing in the underlying litigation. Wakefield nonetheless proceeded with the hearing, Tadlock called Rubio to testify in Wakefield's case as planned, and Wakefield prevailed.

## II. STANDARD OF REVIEW

After Rubio prevailed at the bench trial at issue here, Wakefield did not request findings of fact and conclusions of law. In the absence of any findings of fact and conclusions of law, it is Wakefield's burden as the appellant to show the trial court's judgment was not supported by any legal theory raised by the evidence. *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 279 (Tex. 1987). "When the trial court does not make findings of fact and conclusions of law in a bench trial, the judgment implies all necessary fact findings to support it." *N.Y. Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 856 S.W.2d 194, 205 (Tex. App.—Dallas 1993, no writ). We uphold the judgment on any applicable theory that finds support in the record. *Id.* Because Wakefield did not have the burden of proof at trial, his burden on appeal was to demonstrate "that no evidence exists to support the adverse finding[s]." *BBQ Blues Tex., Ltd. v. Affiliated Bus. Brokers, Inc.*, 183 S.W.3d 543, 545 (Tex. App.—Dallas 2006, pet. denied). "If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails." *Brockie v. Webb*, 244 S.W.3d 905, 909–10 (Tex. App.—Dallas 2008, pet. denied).

## III. ANALYSIS

We first dispose of Wakefield's second issue and his arguments that Rubio failed to introduce any evidence of agency between Wakefield and Tadlock. Tadlock testified he was Wakefield's lawyer in the litigation for which Rubio was engaged, and Wakefield never disputed that fact in his testimony. This is more than

a scintilla of evidence that Tadlock was Wakefield's agent regarding the contract with Rubio. *See Dow Chem. Co. v. Benton*, 357 S.W.2d 565, 567 (Tex. 1962) ("The attorney-client relationship is one of principal and agent."); *see also Boozer v. Fischer*, 674 S.W.3d 314, 326 (Tex. 2023) ("Ordinarily . . . an attorney owes fiduciary duties to—and serves as an agent for—his *own* client, not an adverse party.") (emphasis in original). We overrule Wakefield's second issue.

Wakefield expresses his first issue as: "The trial court erred in entering judgment for damages and attorney's fees against Mr. Wakefield because there was no evidence or insufficient evidence of a contract between Wakefield and Rubio." We are bound, however, to uphold the trial court's ruling if it is correct on any theory applicable to the case. *See Gulf Land Co. v. Atl. Ref. Co.*, 131 S.W.2d 73, 84 (Tex. 1939). Here, a controlling theory at issue is ratification, not the existence of a contract between Wakefield and Rubio.

Under principles of agency, Wakefield is responsible for the acts of Tadlock if Wakefield ratified Tadlock's acts. *See Suzlon Energy Ltd. v. Trinity Structural Towers, Inc.*, 436 S.W.3d 835, 841 (Tex. App.—Dallas 2014, no pet.) ("A principal is liable for the acts of another acting as its agent only when the agent has actual or apparent authority to do those acts or when the principal ratifies those acts."); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 26(3) ("A lawyer's act is considered to be that of a client in proceedings before a tribunal or in dealings with third persons when: . . . (3) the client ratifies the act."). "Ratification may

occur when a principal, though he had no knowledge originally of the unauthorized act of his agent, retains the benefits of the transaction after acquiring full knowledge." *Land Title Co. of Dall. v. F. M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980).

The elements of ratification are (1) approval by act, word, or conduct, (2) with full knowledge of the facts of the earlier act, and (3) with the intent to validate the earlier act. *Neese v. Lyon*, 479 S.W.3d 368, 384 (Tex. App.—Dallas 2015, no pet.). A party ratifies an agreement when—after learning all of the material facts—he confirms or adopts an earlier act that did not then legally bind him and that he could have repudiated. *Id.*

The record reveals that after learning the cost of Rubio's services, Wakefield accepted Rubio's testimony according to the contract. *See Land Title Co. of Dall.*, 609 S.W.2d at 756 ("The critical factor in determining whether a principal has ratified an unauthorized act by his agent is the principal's knowledge of the transaction and his actions in light of such knowledge."). This is more than a scintilla of evidence supporting the trial court's implied finding that Wakefield knowingly approved of Tadlock's conduct, intended to validate Tadlock's conduct, and accepted the benefits of Rubio's testimony after (1) learning Tadlock engaged Rubio to perform expert services with respect to his case, (2) understanding how important the admissibility of evidence from the watch was, (3) personally delivering the watch to Rubio, (4) instructing Rubio to do as his attorney instructed, and (5) learning upon

his arrival at the courthouse for his hearing that Rubio's bill was approaching $10,000. This continued acquisition and retention of benefits supports the trial court's implied findings that Wakefield approved, validated, and ratified Tadlock's unauthorized contract by (1) retaining its benefits; (2) continuing to actively seek those benefits after learning all material facts; and (3) acting in a manner that is inconsistent with his intention to avoid the burdens of Tadlock's contract with Rubio. *See Neese*, 479 S.W.3d at 384; *Land Title Co. of Dall.*, 609 S.W.2d at 756; *see also* 3 Tex. Jur. 3d *Agency* § 134 ("[A] party claiming that a principal ratified an unauthorized act of its agent is required to demonstrate that the principal performed an intentional act that was inconsistent with any intention to avoid the unauthorized act of the agent."). We overrule Wakefield's first issue.

In his third issue, Wakefield challenges the trial court's judgment to the extent it is based upon the absence of an express contract and is rooted in quantum meruit. Because there was an express contract between Rubio and Tadlock and we have overruled Wakefield's challenge to the judgment on breach of that contract, we need not address quantum meruit. *See* TEX. R. APP. P. 47.1.

In his fourth issue, Wakefield challenges the trial court's judgment on the basis that Rubio did not segregate its attorney's fees. Wakefield argues that when a plaintiff sues multiple defendants and some of those defendants settle, that plaintiff must segregate attorney's fees. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex. 1991). *Stewart Title*, however, "does not extend as far as [Wakefield]

would have it—i.e., that, in all cases with multiple defendants, fees *must* be segregated." *See In re Estate of Bean*, 206 S.W.3d 749, 765 (Tex. App.—Texarkana 2006, pet. denied) (emphasis in original). Wakefield fails to identify any manner in which his interests diverge from Tadlock's such that the judgment for fees rendered against one would be unattributable against the other. *See id.*

Instead, Rubio sued Tadlock and Wakefield for breach of contract and quantum meruit, and the underlying contract involved the same parties, the same signatories, the same facts, and the same issues. Rubio and Tadlock settled their differences on the eve of trial. Under the circumstances, we conclude the claims at issue arose out of the same transaction involving the same contract and that the prosecution of Rubio's claims against Wakefield and Tadlock involved essentially the same facts such that segregation was not required. *See Stewart Title Guar. Co.*, 822 S.W.2d at 10–11; *In re Estate of Bean*, 206 S.W.3d at 765; *Flint & Assocs. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex. App.—Dallas 1987, writ denied); *LSC Towers, LLC v. LG Preston Campbell, LLC*, No. 05-20-00433-CV, 2022 WL 3754541, at \*21 (Tex. App.—Dallas Aug. 30, 2022) (mem. op.), *judgment set aside, opinion not vacated*, 2022 WL 4298724 (Sept. 19, 2022, no pet.) (supp. mem. op.). We overrule Wakefield's fourth issue.

## IV. CONCLUSION

Having overruled all four of Wakefield's challenges on appeal, we affirm the trial court's judgment.

/Ken Molberg/
220780f.p05 KEN MOLBERG
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

ROBERT LANSING WAKEFIELD, Appellant

No. 05-22-00780-CV      V.

RUBIO DIGITAL FORENSICS, LLC, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas Trial Court Cause No. 219-02783-2020.
Opinion delivered by Justice Molberg. Justices Carlyle and Smith participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee RUBIO DIGITAL FORENSICS, LLC recover its costs of this appeal from appellant ROBERT LANSING WAKEFIELD.

Judgment entered this 21st day of November, 2023.