**Opinion filed August 22, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00152-CV
_____

## ETC TEXAS PIPELINE, LTD.; OASIS PIPE LINE COMPANY; WESTEX ENERGY, LLC; AND ENERGY TRANSFER, LP F/K/A ENERGY TRANSFER PARTNERS, Appellants

## V.

## ADDISON EXPLORATION & DEVELOPMENT, LLC, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CV52986**

### O P I N I O N

Addison Exploration & Development, LLC sued ETC Texas Pipeline, Ltd., Oasis Pipe Line Company, and WesTex Energy, LLC, alleging that they had wrongfully deprived Addison of certain oil and gas interests.[1] Almost a year later,

---

[1]Addison sued other defendants who are not parties to this interlocutory appeal. Addison's claims against those defendants are not before us and are not addressed in this appeal.

Addison filed an amended petition in which it asserted new claims against ETC, Oasis, and WesTex; added Energy Transfer, LP f/k/a Energy Transfer Partners as a defendant; and alleged that Energy Transfer was vicariously liable for the conduct of its officers, ETC, and WesTex. Appellants filed a motion to dismiss under the Texas Citizens Participation Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2015) (the TCPA) within sixty days after Energy Transfer was served with the amended petition. Following a hearing, the trial court denied the motion to dismiss.

In their first three issues, Appellants contend that the trial court erred by denying the motion to dismiss because, based on the newly asserted vicarious liability claim, the motion was timely as to all claims against Appellants; the TCPA applies because Addison's claims are based on communications made while Appellants were exercising their right of free speech or right of association under the statute; and Addison failed to produce clear and specific evidence of a prima facie case for each element of its claims. In a fourth issue, Appellants assert that, even if Addison met its burden, the trial court was required to dismiss Addison's claims because Appellants proved their affirmative defenses by a preponderance of the evidence.

We affirm the trial court's order denying the motion to dismiss as to Addison's breach of contract and fraud claims against ETC and remand those claims to the trial court for further proceedings. We reverse the trial court's order denying the motion to dismiss as to Addison's vicarious liability claim against Energy Transfer, breach of fiduciary duty claim against ETC, and knowing participation in breach of fiduciary duty claim against Oasis and WesTex and remand those claims to the trial court for entry of a judgment of dismissal and a determination of costs and fees to be awarded under the TCPA. *See* CIV. PRAC. & REM. § 27.009.

*Background Facts*

In 2012, Permian Basin Resources, LLC (PBR), an oil company owned by Ken Moore and Bill Crow, determined that new technologies could be used to extract oil and gas from the land under the City of Big Spring in Howard County, Texas. To capitalize on this opportunity, PBR needed an investor to provide the financial resources to obtain oil and gas leases in approximately 132 sections of generally contiguous land mostly located within the city limits of Big Spring (the Settles Prospect). PBR and Addison agreed that Addison, through its principal officer Karl Richter, would attempt to locate an investor.

Richter's primary experience was in the midstream sector of the oil and gas industry. Before approaching investors about the Settles Prospect, Richter discussed with PBR the possibility of reserving the right for PBR and Addison to develop a midstream system to deliver and market the oil and gas produced from the Settles Prospect. PBR agreed to attempt to reserve the midstream rights for PBR and Addison.

Energy Transfer is a large, publicly traded company with an extensive pipeline system and other midstream infrastructure in the area of the Settles Prospect. ETC is a subsidiary of Energy Transfer. Richter approached individuals he knew at Energy Transfer about the opportunity in the Settles Prospect.[2] Richter's proposal was referred to Marshall McCrea, III, the president and chief operating officer of both Energy Transfer and LG PL, LLC, the general partner of ETC. McCrea directed Brian Beebe, an officer of both Energy Transfer and LG PL, to meet with Richter to discuss the acquisition of oil and gas leases in the Settles Prospect. Addison asserts

---

[2]The pleadings and evidence are inconsistent regarding whether Richter approached Energy Transfer or ETC and whether Energy Transfer or ETC owned the pipeline and infrastructure in the area of the Settles Prospect. For purposes of our analysis, we will consider the evidence in the light most favorable to Addison. *See Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 603 (Tex. App.—San Antonio 2018, pet. denied).

that, at a meeting in December 2012, Beebe agreed that PBR and Addison could acquire the midstream rights from the wellhead to central delivery points (CDPs), while Energy Transfer would have the midstream rights beyond the CDPs (the Beebe Agreement).

On January 9, 2013, PBR, Addison, and ETC signed a Confidentiality and Noncompete Agreement (the Confidentiality Agreement). PBR agreed to disclose its confidential and proprietary information pertaining to the Settles Prospect to ETC, and the parties agreed to engage in confidential negotiations regarding the purchase of oil and gas interests in the Settles Prospect. The Confidentiality Agreement required ETC to keep any data disclosed by PBR confidential. It also prohibited ETC from acquiring, either directly or indirectly, any oil and gas leases or other interests in the Settles Prospect for a period of eighteen months without the written consent of "PBR/Addison" and provided that any such interest acquired by ETC would, at "PBR/Addison's" option, "be deemed to be held in trust" by ETC for the benefit of "PBR/Addison."

PBR and Addison signed a Fee for Services Agreement effective January 17, 2013 (the FFS Agreement). In the FFS Agreement, Addison identified ETC and another company as potential funding sources for the Settles Prospect. The FFS Agreement provided that, if: (1) PBR proceeded with a funding entity identified by Addison, (2) PBR and that entity successfully acquired oil and gas leases in the Settles Prospect, and (3) the leases were sold to a third-party operator, then PBR would pay Addison 1.5% of the cash it received for the leases and 1.5% of any undivided, carried, and/or working interest PBR retained in the leases. The FFS Agreement also provided that PBR would convey to Addison one-half of any midstream rights retained by PBR "to the extent that those rights could be reasonably negotiated for and reserved through a sale" of the oil and gas leases in the Settles Prospect.

Energy Transfer formed WesTex, a wholly owned subsidiary, to acquire the oil and gas leases in the Settles Prospect.[3] On March 7, 2013, PBR and WesTex signed a Joint Acquisition and Development Agreement (the JADA), pursuant to which WesTex agreed to contribute $15,000,000 for the acquisition of oil and gas leases in the Settles Prospect. PBR and WesTex agreed that, on the sale of the oil and gas leases to a third-party operator, WesTex would be repaid the money it contributed and that PBR and WesTex would split any profits. The JADA provided that, with respect to oil and gas produced from the Settles Prospect, WesTex would retain the right to provide transportation, processing, marketing, and other services downstream of the CDPs. Although PBR attempted to negotiate the retention of the right to collect and transport oil and gas from the wellhead to the CDPs, the JADA was silent as to those rights.

Pursuant to the JADA, PBR and WesTex began acquiring oil and gas leases in the Settles Prospect. Addison, however, never gave written consent for the acquisitions.

In December 2013 or January 2014, PBR told Addison that a "critical mass" of leases had been acquired and that PBR and WesTex intended to sell the leases to a third-party operator. PBR instructed Addison to begin putting together the wellhead-to-CDPs midstream plan. Richter met with potential partners to develop this plan, but was subsequently told by PBR that WesTex demanded that Addison "cease and desist" all attempts to organize the midstream plan.

PBR and WesTex sold the oil and gas leases to Rock Oil Holdings, LLC on September 26, 2014. The Purchase and Sale Agreement with Rock Oil (the PSA) gave WesTex the option to purchase or gather, transport, and/or process for a fee all

---

[3]The pleadings and evidence are inconsistent regarding whether Energy Transfer or ETC formed WesTex. Again, for purposes of our analysis, we will consider the evidence in the light most favorable to Addison. *See Elkins*, 553 S.W.3d at 603.

natural gas and natural gas liquids from the Settles Prospect until December 31, 2025, and all crude oil and condensate from the Settles Prospect until December 31, 2020. PBR and WesTex also retained overriding royalty interests (ORRIs) on the leases it sold to Rock Oil. The ORRIs were later assigned to Oasis, an affiliate of Energy Transfer, and Castle Rock Royalty, LLC, an entity owned by Moore and Crow. Although WesTex subsequently assigned to Richter the wellhead-to-CDP rights for the Settles Prospect leases that WesTex owned, Addison contends that these rights were less valuable than the rights that it had been promised.

Addison sued ETC, Oasis, and WesTex. In a second amended petition filed on June 26, 2017,[4] Addison asserted claims against ETC for breach of the Confidentiality Agreement, breach of the Beebe Agreement, and fraud; against ETC and WesTex for tortious interference with the FFS Agreement; and against ETC, WesTex, and Oasis for unjust enrichment.

On March 15, 2018, Addison filed a fourth amended petition in which it named Energy Transfer as a defendant, dropped its claims for tortious interference and unjust enrichment, and added claims against ETC, Oasis, and WesTex based on breach of a fiduciary duty. Addison alleged causes of action against ETC for breach of the Confidentiality Agreement, breach of the Beebe Agreement, breach of fiduciary duty, and fraud and against Oasis and WesTex for knowing participation in ETC's breach of fiduciary duty. Addison did not assert any direct claims against Energy Transfer but alleged:

> At the outset, Energy Transfer has been added as a party because it is liable for the acts of its officers named herein, who are also officers of WesTex and ETC and through them controlled these entities, and because Energy Transfer formed WesTex solely for the purpose of acquiring oil and gas leases in the Settles Prospect and intended to retain the midstream rights in those leases once the leases were sold.

---

[4]Neither the original nor the first amended petition are in the appellate record.

6

On May 7, 2018, Appellants filed a TCPA motion to dismiss all of Addison's claims against Appellants. Addison responded to the motion on May 24, 2018, the day of the scheduled hearing. The trial court denied the motion to dismiss.

*Analysis*

The TCPA protects citizens from retaliatory lawsuits meant to intimidate or silence them on matters of public concern. *Dallas Morning News, Inc. v. Hall*, No. 17-0637, 2019 WL 2063576, at *4 (Tex. May 10, 2019); *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The stated purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." CIV. PRAC. & REM. § 27.002; *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam). We construe the TCPA "liberally to effectuate its purpose and intent fully." CIV. PRAC. & REM. § 27.011(b); *see also State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018).

The TCPA provides a procedure to expedite the dismissal of a "legal action" that appears to stifle the defendant's exercise of the rights protected by the statute. *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018); *see also* CIV. PRAC. & REM. §§ 27.003(a), .005(b). The movant bears the initial burden of showing by a preponderance of the evidence that the legal action is based on, related to, or in response to the movant's exercise of the right of free speech, the right of association, or the right to petition. CIV. PRAC. & REM. §§ 27.003(a), .005(b); *see also S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). If the movant makes this showing, the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. CIV. PRAC. & REM. § 27.005(c); *Elliott*, 564 S.W.3d at 847. Additionally,

a trial court is required to dismiss a legal action if "the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." CIV. PRAC. & REM. § 27.005(d).

We review de novo the trial court's denial of a TCPA motion to dismiss and the question of whether the parties satisfied their respective burdens as set out in the TCPA. *Hall*, 2019 WL 2063576, at *5. In conducting this review, we consider the pleadings and the supporting evidence in the light most favorable to the nonmovant. *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 603 (Tex. App.— San Antonio 2018, pet. denied); *see also* CIV. PRAC. & REM. § 27.006(a). The plaintiff's pleadings are generally "the best and all-sufficient evidence of the nature of the action." *West v. Quintanilla*, 573 S.W.3d 237, 242 n.8 (Tex. 2019) (quoting *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017)).

*Timeliness of Motion to Dismiss*

The TCPA requires a defendant to file a motion to dismiss within sixty days of service of the legal action. CIV. PRAC. & REM. § 27.003(b). On a showing of good cause, the trial court may extend the time to file a motion to dismiss. *Id.* A defendant who fails to timely file a TCPA motion to dismiss forfeits the protections of the statute. *Grubbs v. ATW Invests., Inc.*, 544 S.W.3d 421, 425 (Tex. App.—San Antonio 2017, no pet.) (concluding that movant's failure to meet procedural requirements of TCPA resulted in forfeiture of statute's protections).

Appellants filed the motion to dismiss within sixty days after Energy Transfer was served with the fourth amended petition. Accordingly, the motion to dismiss was timely as to Addison's vicarious liability claim against Energy Transfer. However, the motion to dismiss was filed more than sixty days after ETC, Oasis, and WesTex were served with Addison's legal action, and the motion was untimely as to Addison's claims against those defendants unless the filing of the fourth

amended petition provided them with additional time to seek dismissal under the TCPA.

Although an amended pleading that does not add new parties or claims does not restart the deadline for filing a TCPA motion to dismiss, *Bacharach v. Garcia*, 485 S.W.3d 600, 602–03 (Tex. App.—Houston [14th Dist.] 2016, no pet.), an amended petition asserting claims based upon new factual allegations may reset a TCPA deadline as to the newly added substance, *Jordan v. Hall*, 510 S.W.3d 194, 198 (Tex. App.—Houston [1st Dist.] 2016, no pet.). However, additional details in a subsequent petition do not restart the time for filing a motion to dismiss if the same essential factual allegations as to the claim were presented in an earlier petition. *Paulsen v. Yarrell*, 455 S.W.3d 192, 197 (Tex. App.—Houston [1st Dist.] 2014, no pet.), *superseded by statute on other grounds as stated in Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881, 886–87 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *see also Jordan*, 510 S.W.3d at 198 (concluding that TCPA filing deadline was not reset by the filing of a supplemental petition when the factual allegations underlying both the original and supplemental petition were the purported illegal placement of radio advertisement); *Hicks v. Grp. & Pension Adm'rs, Inc.*, 473 S.W.3d 518, 529 (Tex. App.—Corpus Christi 2015, no pet.) (concluding that deadline to file a motion to dismiss was triggered by the original petition asserting claims, not by an amended petition that retained the claims).

The fourth amended petition alleged, for the first time, that ETC owed Addison a fiduciary duty, that ETC breached that duty, and that Oasis and WesTex knowingly participated in that breach. Therefore, the motion to dismiss was timely as to those claims. *See Jordan*, 510 S.W.3d at 198. However, although the fourth amended petition contained more detailed factual allegations in support of Addison's claims against ETC for breach of contract and fraud, it did not alter the essential nature of those claims. Accordingly, the fourth amended petition did not restart the

9

deadline for filing a TCPA motion to dismiss as to Addison's claims against ETC for breach of contract and fraud, *see Bacharach*, 485 S.W.3d at 602–03, and ETC forfeited the protections of the statute as to those claims, *see Grubbs*, 544 S.W.3d at 425–26; *In re Estate of Check*, 438 S.W.3d 829, 836–37 (Tex. App.—San Antonio 2104, no pet.).

Appellants argue that, regardless of ETC's failure to timely file a motion to dismiss as to Addison's breach of contract and fraud claims, ETC can join Energy Transfer's motion because Addison's claim against Energy Transfer is premised solely on vicarious liability and that "claim for secondary liability necessarily puts in play every element of those primary causes of action." Appellants contend that any other approach "would lead to illogical results, potentially letting a vicariously-liable defendant avoid judgment while imposing liability on the direct defendant."

Although we question whether the filing of a new vicarious liability claim can "undo" a direct defendant's forfeiture of its rights under the TCPA, it is not necessary for us to resolve that issue in this appeal. As set out below, Addison failed to provide clear and specific evidence of a prima facie case that Energy Transfer was vicariously liable for any conduct by ETC. Accordingly, we are not confronted with a case in which, due to the plaintiff's failure to produce clear and specific evidence of the "primary cause of action," the claims against the vicariously liable defendant are dismissed while the direct defendant remains potentially liable.

*Applicability of the TCPA*

As the movants, Appellants were required to show by a preponderance of the evidence that the TCPA applies to Addison's legal action. CIV. PRAC. & REM. §§ 27.001(6), .005(b); *see also Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 892 (Tex. 2018) ("A 'legal action' can consist of an entire lawsuit or a single cause of action."). In their first two issues, Appellants assert that they met

10

their burden by establishing that Addison's claims are based on, related to, or in response to Appellants' exercise of their right of free speech and right of association.

As defined by the TCPA, the "exercise of the right of free speech" is a communication made in connection with a matter of public concern. CIV. PRAC. & REM. § 27.001(3). A "matter of public concern" includes an issue related to health or safety; environmental, economic, or community well-being; the government; a public official or public figure; or a good, product, or service in the marketplace. *Id.* § 27.001(7). A communication includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

Private communications made in connection with a matter of public concern fall within the TCPA's definition of the exercise of the right of free speech. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). Further, the TCPA does not require that the communications specifically mention a matter of public concern or have more than a "tangential relationship" to such a matter. *Coleman*, 512 S.W.3d at 900. Rather, the TCPA applies so long as the movant's statements are "in connection with" "issue[s] related to" any of the matters of public concern listed in the statute. *Id.*

In determining whether the TCPA is applicable, we conduct "a holistic review of the pleadings." *Adams*, 547 S.W.3d at 897.[5] Our analysis is not constrained by the "precise legal arguments or record references" made by the moving party regarding the TCPA's applicability. *Id.* Rather, our focus is "on the pleadings and on whether, as a matter of law, they are based on or relate to a matter of public

[5]In their motion to dismiss, Appellants asserted that the TCPA applied to Addison's claims because Appellants' communications were made in connection with (1) environmental, economic, or community well-being and (2) services for oil and gas transportation to and within the marketplace. Because, as a matter of law, Appellants' communications relate to an existing service in the marketplace, we need not address whether they also relate to environmental, economic, or community well-being. *See* TEX. R. APP. P. 47.1.

11

concern." *Id.* "When it is clear from the plaintiff's pleadings that the action is covered by the [TCPA], the defendant need show no more." *Id.* (quoting *Hersh*, 526 S.W.3d at 467); *see also Coleman*, 512 S.W.3d at 901–02 (concluding as a matter of law that private statements by movants concerning plaintiff's alleged failure to gauge a storage tank related to a matter of public concern); *Lippincott*, 462 S.W.3d at 510 (concluding as a matter of law that provision of medical services by a health care professional was a matter of public concern).

In its fourth amended petition, Addison alleged that Appellants made oral and written communications about the Beebe Agreement, the Confidentiality Agreement, acquiring oil and gas interests in the Settles Prospect, the division of the midstream rights, the JADA, and the PSA. The underlying basis of all of Addison's claims is that, as part of these communications, Addison was promised that any oil and gas interests acquired in the Settles Prospect without Addison's written consent would be held in trust for Addison and that Addison would have the right to collect oil and natural gas at the wellheads in the Settles Prospect and transport it to CDPs. Addison asserts that it did not receive the rights or interests that it was promised.

In support of its claims, Addison alleged that Energy Transfer had "an extensive pipeline system and other midstream infrastructure" in the area of the Settles Prospect. Addison also produced evidence that ETC and Sunoco Logistics Partners, LP, a subsidiary of Energy Transfer, had existing pipelines in the area of the Settles Prospect that were used to transport crude oil and natural gas products. Beebe's proposal to PBR anticipated that all crude oil and natural gas from the Settles Prospect would be delivered to these existing pipelines. Further, the JADA stated that a "principal motivation" for WesTex to enter the agreement was its "anticipated ability to negotiate and retain the right to provide transportation, processing, marketing, and other services" with respect to oil and gas produced from the Settles Prospect.

12

As a matter of law, Appellants' communications about acquiring the oil and gas leases in the Settles Prospect and the right to gather and transfer oil and gas from those leases to the existing pipelines were at least tangentially related to an existing service in the marketplace, a "matter of public concern" under the TCPA. *See* CIV. PRAC. & REM. § 27.001(7); *see also Adams*, 547 S.W.3d at 894 (noting courts must adhere to definitions in the TCPA). Because Addison's claims related to Appellants' exercise of their right of free speech as defined by the TCPA, Appellants met their burden of establishing that the TCPA applies to Addison's claims.[6]

Addison argues that, even if Appellants established that the TCPA applies to its claims, the claims fall within the "commercial speech" exemption of the TCPA. *See* CIV. PRAC. & REM. § 27.010(b); *Harper*, 562 S.W.3d at 11 (noting that, if the TCPA exemption applies, movant cannot invoke statute's protections). The commercial speech exemption in the TCPA applies when:

> (1) the defendant was primarily engaged in the business of selling or leasing goods, (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (per curiam); *see also* CIV. PRAC. & REM. § 27.010(b).

---

[6]Although the TCPA "casts a wide net," *Adams*, 547 S.W.3d at 894, our conclusion that the communications in this case fall within the scope of the TCPA should not be read as a determination that all communications made in connection with a private business dispute are protected by the statute. *See Erdner v. Highland Park Emergency Ctr., LLC*, No. 05-18-00654-CV, 2019 WL 2211091, at *5 (Tex. App.—Dallas May 22, 2019, no pet. h.) (concluding that not all private business discussions are a matter of public concern under the TCPA); *Brugger v. Swinford*, No. 14-16-00069-CV, 2016 WL 4444036, at *3 (Tex. App.—Houston [14th Dist.] Aug. 23, 2016, no pet.) (mem. op.) (concluding that communication made in connection with a business dispute was not a matter of public concern under the TCPA).

Addison, as the nonmovant, had the burden of proving the statutory exemption. *Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App.—Houston [14th Dist.] 2015, no pet.). However, all the communications relied upon by Addison were made between the parties to the alleged Beebe Agreement, the Confidentiality Agreement, or the JADA—not to any potential customer of a service provided by Appellants. Addison, therefore, failed to prove that the commercial speech exception applies.

We sustain Appellants' first issue as to Addison's vicarious liability claim against Energy Transfer, breach of fiduciary duty claim against ETC, and knowing participation in breach of fiduciary claim against Oasis and WesTex. Because we have determined that Appellants met their initial burden to demonstrate that those claims related to Appellants' exercise of the right of free speech under the TCPA, we need not address Appellants' second issue in which they assert that the communications also involved the exercise of the right of association. *See Coleman*, 512 S.W.3d at 901–02.

### *Prima Facie Case*

In their third issue, Appellants contend that Addison failed to carry its burden to establish by clear and specific evidence a prima facie case for each essential element of its claims. "A prima facie case is the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Hall*, 2019 WL 2063576, at *4 (internal quotation marks omitted). "Requiring 'clear and specific evidence' means the plaintiff 'must provide enough detail to show the factual basis for its claim' and must provide enough evidence 'to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re Lipsky*, 460 S.W.3d at 590–91); *see* CIV. PRAC. & REM. § 27.005(c). The TCPA, however, "does not impose a higher burden of proof than that required of the plaintiff at trial." *In re Lipsky*, 460 S.W.3d at 591. Further, the plaintiff may rely on circumstantial evidence

14

unless "the connection between the fact and the inference is too weak to be of help in deciding the case." *Id.* at 589.

We first consider whether Addison produced clear and specific evidence of a prima facie case that Energy Transfer is vicariously liable for the conduct of ETC or WesTex. In the fourth amended petition, Addison alleged that Energy Partners was liable for the acts of its officers "named herein," that those individuals were also officers of ETC and WesTex, that Energy Transfer "controlled" ETC and WesTex through those officers, and that Energy Transfer formed WesTex solely for the purpose of acquiring oil and gas leases in the Settles Prospect and intended to retain the midstream rights in those leases when those leases were sold. Addison, therefore, appears to have pleaded an "alter ego" theory for vicarious liability.

The "[c]reation of affiliated corporations to limit liability while pursuing common goals lies firmly within the law and is commonplace." *SSP Partners v. Gladstrong Invests. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008). Therefore, for the purposes of legal proceedings, a subsidiary corporation and a parent corporation are considered separate and distinct "persons" as a matter of law. *R&M Mixed Beverage Consultants, Inc. v. Safe Harbor Benefits, Inc.*, No. 08-17-00054-CV, 2019 WL 2443071, at *6 (Tex. App.—El Paso June 12, 2019, no pet.); *see also Sitaram v. Aetna U.S. Healthcare of N. Tex., Inc.*, 152 S.W.3d 817, 825 (Tex. App.— Texarkana 2004, no pet.) (noting that courts generally presume that a parent corporation and its separate corporate subsidiary are distinct legal entities). Courts will generally observe the separate entity of corporations "even where one company may dominate or control the other company, or treats the other company as a mere department, instrumentality, or agency." *R&M Mixed Beverage Consultants*, 2019 WL 2443071, at *6 (quoting *Formosa Plastics Corp, USA v Kajima Int'l, Inc.*, 216 S.W.3d 436, 459–60 (Tex. App.—Corpus Christi 2006, pet. denied)); *see Neff v. Brady*, 527 S.W.3d 511, 525 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

15

"The fact that a corporation may be a parent of a subsidiary corporation does not automatically render it liable for the actions of its subsidiaries." *R&M Mixed Beverage Consultants*, 2019 WL 2443071, at \*6. Corporations are not liable "for each other's obligations merely because of centralized control, mutual purposes, and shared finances." *SSP Partners*, 275 S.W.3d at 455. There must also be evidence of abuse, injustice, and inequity before one corporation may be held liable for another corporation's obligations. *Id.* The terms "injustice" and "inequity" do not mean a subjective perception of unfairness. *Id.* Rather, it must appear that "the corporate entity of the subsidiary is being used as a sham to perpetuate a fraud, to avoid liability, to avoid the effect of a statute, or in other exceptional circumstances." *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984); *see also SSP Partners*, 275 S.W.3d at 455. The plaintiff is required to "prove that he has fallen victim to a basically unfair device by which a corporate entity has been used to achieve an inequitable result." *Lucas*, 696 S.W.3d at 375. The fact that the parent and subsidiary corporations have overlapping directors or officers generally does not establish such an "unfair device." *Id.* at 376; *see also Neff*, 527 S.W.3d at 525. "The same is true even though most or all the capital stock of a subsidiary corporation is owned by its parent corporation." *Neff*, 527 S.W.3d at 525.

Addison (1) pleaded and offered evidence that ETC and WesTex were subsidiaries of Energy Transfer and that the corporations had common officers and (2) made the conclusory allegation that Energy Transfer "controlled" ETC and WesTex. Addison did not plead, and offered no evidence of, any abuse, injustice, or inequity that would support holding Energy Transfer liable for the conduct of its subsidiaries. Accordingly, Addison failed to produce clear and specific evidence that Energy Transfer was vicariously liable for the conduct of ETC and WesTex based on an alter ego theory.

16

In its response to the motion to dismiss, Addison argued that ETC, WesTex, McCrea, and Beebe were Energy Transfer's agents and acted within the scope of their authority when they promised that Addison would have the wellhead-to-CDPs midstream rights; entered into the Beebe Agreement, the Confidentiality Agreement, and the JADA; acquired the leases without Addison's written consent; sold the leases to Rock Oil without retaining the wellhead-to-CDPs midstream rights for Addison; and transferred the ORRIs to Oasis. Although Addison did not specifically plead an agency theory, Appellants did not object to Addison's arguments in the trial court. Therefore, we will consider whether Addison produced clear and specific evidence that ETC, WesTex, McCrea, or Beebe acted as Energy Transfer's agent such that Energy Transfer can be held liable for their conduct.

Agency is a consensual relationship between two parties by which one party, the agent, acts on behalf of the other, the principal, subject to the principal's control. *Cole v. McWillie*, 464 S.W.3d 896, 901 (Tex. App.—Eastland 2015, pet. denied). To establish an agency relationship, the evidence must show that the purported agent consented to act on the principal's behalf and subject to the principal's control and that the purported principal authorized the agent to act on its behalf. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 691 (Tex. 2017). "A good faith belief on the part of a third party that an entity with whom it is dealing is the agent of another is not enough to bind the purported principal." *Suzlon Energy Ltd. v. Trinity Structural Towers, Inc.*, 436 S.W.3d 835, 841 (Tex. App.—Dallas 2014, no pet.). Rather, a principal is liable for the acts of its agent only when the agent has actual or apparent authority to do the act or when the principal ratifies the act. *Id.* "An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)." *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). "Texas law does not presume agency, and the party who alleges it

has the burden of proving it." *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007) (per curiam).

Addison first argues that ETC and WesTex were Energy Transfer's agents. One corporation may act as an agent for another. *In re Credit Suisse First Boston Mortg. Capital, L.L.C.*, 273 S.W.3d 843, 849 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). However, the "mere existence of a subsidiary corporation that performs a beneficial function for the parent does not automatically establish the existence of an agency relationship." *Coleman v. Klockner & Co. AG*, 180 S.W.3d 577, 592 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

In support of its agency theory, Addison alleged only that there was a parent–subsidiary relationship between Energy Transfer, as the parent, and ETC and WesTex, as the subsidiaries; that the companies had overlapping officers; and that Energy Transfer "controlled" the other two corporations through those officers. We first note that the conclusory allegation of "control" by Energy Transfer is insufficient to establish a prima facie case under the TCPA. *See In re Lipsky*, 460 S.W.3d at 592 ("Bare, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA."). Further, other than the existence of common officers, Addison did not plead any facts or produce any evidence that would support that either ETC or WesTex was acting on behalf of Energy Transfer, as opposed to their own behalf, with regard to the oil and gas leases in the Settles Prospect. Addison, therefore, failed to produce clear and specific evidence that either ETC or WesTex was Energy Transfer's agent.

Addison also argues that McCrea and Beebe were Energy Transfer's agents throughout the communications relating to the Settles Prospect. However, to hold Energy Transfer liable for McCrea's or Beebe's conduct, Addison was required to show that McCrea or Beebe acted as Energy Transfer's agent. *See Suzlon Energy*,

18

436 S.W.3d at 841 (noting principal is bound by acts of agent with actual or apparent authority to act for principal). An individual can act as an agent for more than one principal. *See Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 924 & n.18 (Tex. 2010); *Cent. States Logistics, Inc. v. BOC Trucking, LLC*, 573 S.W.3d 269, 279 (Tex. App.—Houston [1st Dist.] 2018, pet. filed) (noting that officer of corporation could act as agent for more than one company). Addison produced evidence that Beebe signed the Confidentiality Agreement as senior vice president of LG PL, the general partner of ETC, and that McCrea signed the JADA and the PSA as president and chief operating officer of WesTex. Addison produced no evidence that McCrea or Beebe acted as the agents of Energy Transfer, as opposed to the agents of ETC or WesTex, in signing those agreements.

With respect to the Beebe Agreement, Addison factually alleged that Richter met with "Energy Transfer's Brian Beebe" and that, during that meeting, Beebe agreed that Addison and PBR could have the wellhead-to-CDPs midstream right. However, Addison, in its pleaded causes of action, asserted that ETC, not Energy Transfer, fraudulently induced Addison into entering the Beebe Agreement and subsequently breached the agreement. Therefore, Addison's claims relating to the Beebe Agreement are premised on Beebe acting as an agent for ETC, not Energy Transfer, in regards to that alleged agreement. As discussed above, Addison failed to establish that ETC was Energy Transfer's agent.

We conclude that Addison failed to carry its burden of producing clear and specific evidence of a prima facie case for each element of its allegation that Energy Transfer was vicariously liable for the conduct of ETC and WesTex on an alter ego theory or for the conduct of ETC, WesTex, McCrea, or Beebe based on an agency theory.

We finally consider whether Addison met its burden of producing clear and specific evidence of a prima facie case of each element of its breach of fiduciary

19

duty claim against ETC. Addison's breach of fiduciary duty claim is based on a provision in the Confidentiality Agreement that provides:

> Any of the Interests or information related thereto acquired by [ETC] or for [ETC] within the Restricted Area during the eighteen (18) month period described above without PBR/[Addison]'s prior written consent shall, at PBR/[Addison]'s option, be deemed to be held by [ETC] as PBR/[Addison]'s trustee, and at PBR/[Addison]'s election, [ETC] shall convey to PBR/[Addison] all of such portions of said Interests as PBR/[Addison] may designate, and for such Interests so conveyed, [ETC] shall be reimbursed for the actual out of pocket cost to [ETC] of acquiring same.

Addison alleges that it never gave written consent for WesTex to acquire oil and gas leases in the Settles Prospect; that, through WesTex, ETC indirectly acquired the oil and gas leases; that ETC was required to hold the acquired oil and gas leases in trust for Addison; that, as trustee, ETC owed Addison a fiduciary duty; and that ETC breached its fiduciary duty by allowing WesTex to sell the oil and gas leases to Rock Oil and to transfer the ORRIs to Oasis and Castle Rock.

To prevail on a breach of fiduciary duty claim, the plaintiff must establish: (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). A fiduciary relationship may be formal or informal. *Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005) (per curiam). In certain formal relationships, including a trustee relationship, a fiduciary duty arises as a matter of law. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 220 (Tex. 2019).

Addison contends that, pursuant to the Confidentiality Agreement, ETC was a trustee for Addison's benefit. However, the mere designation of a party as a "trustee" does not create a trust. *Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 249 (Tex. 1984); *The Episcopal Church v. Salazar*, 547 S.W.3d 353, 421 (Tex. App.—

20

Fort Worth 2018, pet. filed). For there to be a valid trust, the beneficiary, the *res*, and the trust purpose must be identified. *Perfect Union Lodge No. 10, A.F. & A.M., of San Antonio v. Interfirst Bank of San Antonio, N.A.*, 748 S.W.2d 218, 220 (Tex. 1988); *Salazar*, 547 S.W.3d at 421.

The provision of the Confidentiality Agreement relied upon by Addison does not identify any specific property that ETC would hold in trust for Addison. Rather, it provided that, if ETC breached the Confidentiality Agreement by acquiring oil and gas leases in the Settles Prospect, then at Addison's option, ETC would be "deemed" to hold the acquired leases in trust for Addison and that Addison could elect to purchase the acquired leases from ETC. In providing this protection for Addison from any breach by ETC, the Confidentiality Agreement merely designated ETC as a "trustee" and did not create a trust. Further, Addison produced no evidence that it exercised its "option" for ETC to hold any oil and gas leases in trust or elected to purchase those interests from ETC.

Addison adduced no evidence that ETC owed Addison a fiduciary duty. Accordingly, it failed to establish by clear and specific evidence a prima facie cause of all essential elements of its breach of fiduciary duty claim. *See James v. Calkins*, 446 S.W.3d 135, 148 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (concluding nonmovant failed to meet burden under TCPA as to its request for a constructive trust because there was no evidence to show any fiduciary duty was breached). Further, because it failed to establish that ETC breached a fiduciary duty to Addison, Addison also failed to carry its burden as to its claim that Oasis and WesTex knowingly participated in that breach. *See Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942) (noting that third party that knowingly participated in a breach of fiduciary duty becomes a joint tortfeasor with the fiduciary).

We conclude that Addison failed to produce clear and specific evidence of a prima facie case for each element of its vicarious liability claim against Energy Transfer, breach of fiduciary duty claim against ETC, and knowing participation in breach of fiduciary duty claim against Oasis and WesTex. Therefore, we sustain Appellant's third issue as to those claims. Based on our resolution of Appellants' third issue and our determination that the motion to dismiss was untimely as to Addison's claims against ETC for breach of contract and fraud, we need not address Appellants' fourth issue in which they contend that they established a defense to Addison's claims. *See* TEX. R. APP. P. 47.1.

## *Constitutionality of the TCPA*

In its brief, Addison asserts that, if we determine that the TCPA requires dismissal, then the TCPA is unconstitutional as applied in this case because it violated (1) the right to a trial by jury by having the trial court, rather than a jury, engage in a preponderance-of-the-evidence analysis and (2) the constitutional right to due process and the Open Courts provision of the Texas constitution. Addison did not raise these constitutional challenges in the trial court and, therefore, did not preserve them for appellate review. *See Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 222 (Tex. 2002) (observing that litigant "must raise an open-courts challenge in the trial court" to preserve a challenge for appellate review); *Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001) ("[A]s a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal." (quoting *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993))); *see also Whisenhunt v. Lippincott*, 474 S.W.3d 30, 39 (Tex. App.—Texarkana 2015, no pet.) (concluding the appellant waived complaint that TCPA was unconstitutional by failing to raise argument in trial court); *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 352 n.1 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (same).

*Additional Discovery*

In a cross-point, Addison requests that, if we determine that it cannot prevail as to any part of this appeal, we remand the case to permit Addison to seek leave to engage in discovery to further substantiate its claims.

When a TCPA motion to dismiss is filed, "all discovery in the legal action is suspended" unless, on a showing of good cause, the trial court allows "specified and limited discovery relevant to the motion." CIV. PRAC. & REM. §§ 27.003(c), .006(b). Addison filed its response to Appellants' motion to dismiss on the day of the hearing on the motion. In its response, Addison requested:

> If the Court finds that Addison has not established by clear and specific evidence a prima facie case for each essential element of its claims, Addison respectfully moves this Court to allow Addison to conduct the oral and video depositions of ETC, WesTex, and Oasis which it has been attempting to schedule since March.

The trial court did not explicitly rule on Addison's request for discovery.

We question whether the TCPA authorizes a trial court to permit discovery after concluding that the plaintiff failed to establish a prima facie case. *See Landry's, Inc. v. Animal Legal Def. Fund*, 566 S.W.3d 41, 69 (Tex. App.—Houston [14th Dist.] 2018, pet. filed). However, we need not address that issue because Addison has failed to preserve its cross-point for our review.

In order to preserve error, a party must make a timely request for relief and obtain a ruling from the trial court. TEX. R. APP. P. 33.1(a). Addison waited to request limited discovery until the very day of the hearing at which it was supposed to present its prima facie case. Although Addison raised its conditional request for discovery during the hearing, Addison did not obtain a ruling on the requested discovery either at the hearing or in the trial court's written order. Addison, therefore, failed to preserve its cross-point for our review. *See Whisenhunt*, 474 S.W.3d at 40–41. We overrule Addison's cross-point.

*This Court's Ruling*

We affirm the trial court's order denying the motion to dismiss as to Addison's breach of contract and fraud claims against ETC and remand those claims to the trial court for further proceedings. We reverse the trial court's order denying the motion to dismiss as to Addison's vicarious liability claim against Energy Transfer, breach of fiduciary duty claim against ETC, and knowing participation in breach of fiduciary duty claim against Oasis and WesTex and remand those claims to the trial court for entry of a judgment of dismissal and a determination of costs and fees to be awarded under the TCPA.


KEITH STRETCHER

JUSTICE


August 22, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Judge Trotter[7]

Willson, J., not participating.

---

[7]The Honorable W. Stacy Trotter, 358th District Court, Ector County, Texas, sitting by assignment.